UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

───────────────────────────────────────────────────────

**TENISHA WILLIAMS**, individually and on
behalf of all similarly situated individuals,

     Plaintiff,

vs.

**SYKES ENTERPRISES, INC.**, and **ALPINE
ACCESS, INC.**, a wholly owned subsidiary
of Sykes Enterprises, Inc.,

    Defendants.

Case No. 0:13-cv-00946

**COMPLAINT
CLASS ACTION/
COLLECTIVE ACTION**

**JURY TRIAL DEMANDED**

───────────────────────────────────────────────────────

Plaintiff, TENISHA WILLIAMS ("Plaintiff"), by and through the undersigned counsel,
brings this Complaint against Defendant Sykes Enterprises, Inc. and Alpine Express, Inc.
(collectively, "SEI"),[1] and states as follows:

**<u>INTRODUCTION</u>**

1.    This is a class and collective action brought by Plaintiff, TENISHA WILLIAMS,
on behalf of herself and all similarly situated current and/or former employees of SEI to recover
for SEI's willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*,
the Minnesota Fair Labor Standards Act, Minn. Stat. §§ 177.21-177.35 ("MFLSA"), and alleged
contractual obligations (or unjust enrichment if no contract is found).

2.    SEI employs over 38,000 employees in 75+ global customer service call centers
across the United States and 23 other countries.  Additionally, SEI employs thousands of at-
home agents throughout North America.  These operations are staffed by "customer service
agents," "customer service representatives," "medical customer service agents," "technical

───────────────────────────────

[1]    Alpine Access (www.alpineaccess.com) was purchased by Sykes Enterprises, Inc. in
August 2012 for $150 million and now operates as "SYKES Home Powered by Alpine Access."

customer service agents," "bilingual Spanish customer service agents," and other similarly described personnel (collectively, "CSAs").  However, regardless of the employees' job titles, all CSAs at SEI perform the same basic job duties – providing customer support to individuals over the telephone.

3.       The CSA jobs at SEI (both at-home and at SEI's call center locations) are unskilled, non-exempt positions that typically pay from $8.00 to $11.00 per hour (i.e., a few dollars more than the federally mandated minimum wage).  The U.S. Department of Labor has recognized that call center jobs are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry.  One of those abuses, which is occurring in the case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday."  DOL Fact Sheet #64, at 2 (attached hereto as Exhibit A).

4.       In order to perform her job, Plaintiff was required to start up a USB Drive and log in to several secure servers in order to access pertinent client data, sales records, etc.  The preliminary setup and login process involved the startup of an entire suite of programs, the creation of secure (VPN) connections with SEI's and its corporate customer's computer systems, and the downloading of customer information.  A typical CSA logged in and out of these systems 2-3 times per day as part of their work schedule.[2]

5.       Plaintiff was not allowed or even able to electronically "clock in" for her shift(s) each session until the setup and login process was complete; meaning that Plaintiff and all other Class members worked off-the-clock during the "boot-up" process each session without

---

[2]       A short video explaining the setup and login process can be viewed at: https://jobs.alpineaccess.com/day-in-tshe-life/your-day1/   A chart on its webpage also provides "a day in the life" of a CSA, and illustrates why CSAs may be required to perform the setup and login process multiple times per day (attached hereto as Exhibit B).

compensation.  The time Plaintiff spent setting up and logging in each session directly benefitted SEI and the process was an essential part of Plaintiff's job responsibilities as a CSA.

6.      Additionally, SEI's computer system automatically "clocked out" Plaintiff at the end of her designated shift(s) even if Plaintiff was in the middle of a call.  The postliminary activity was never accounted for or paid for by SEI, even though they had the ability to do so.  These postliminary activities were an essential part of Plaintiff's job responsibilities and these off-the-clock activities directly benefitted SEI and its corporate clients.

7.      The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary preliminary and postliminary activities:  "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails."  DOL Fact Sheet, at 2.  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept."  *Id*. at 2.  SEI did not record these pre-shift and post-shift job-related activities and Plaintiff could not enter the time manually.

8.      SEI knows or could have easily determined how long it takes for a CSA to complete the preliminary setup and login process – indeed, it is the industry leader in the field – and it could have properly compensated Plaintiff and the Class for the preliminary setup and login work they performed, but it did not.  SEI also knows or could have easily determined or tracked how long the last call of each CSA's shift took to wrap up and it could have paid Plaintiff and the Class for the postliminary work they performed, but it did not.  Additionally, SEI knows or could have easily determined or tracked how long it took its CSAs to complete "repeat call" memos, but it did not.  On behalf of herself and thousands of others similarly

3

situated SEI employees and CSAs, Plaintiff seeks to recover the full measure of back-pay and damages allowed by law.

## JURISDICTION AND VENUE

9.     The Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

10.     The Court has jurisdiction over Plaintiff's Collective Action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

11.     SEI's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in the case on an enterprise basis.  SEI's call center agents engage in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

12.     The Court has jurisdiction over Plaintiff's state law class claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and this is a case in which more than two-thirds of the proposed Class members and SEI are citizens of different states.

13.     Venue is proper in the District pursuant to 28 U.S.C. § 1391 because the actions and omissions giving rise to the claim pled in the Complaint substantially occurred in the District.

## PARTIES

14.     Plaintiff, TENISHA WILLIAMS, is an individual who resides in Osseo, Minnesota.  Plaintiff started to work for SEI as a Customer Service Representative in August

2012.  As of the date of this Complaint, she still works for SEI.

15.    The individuals which Plaintiff seeks to represent in the action are all similarly situated current and former CSAs who were employed by SEI to provide at-home and call center support services in the United States.  Plaintiff reserves the right to change or expand the class definition as facts and circumstances require.

16.    SEI is a publicly traded company incorporated under the laws of the State of Florida.  SEI provides call center services for a number of well-known Fortune 1,000 companies; including, Gateway, Sirius, Johnson & Johnson, and Bank of America.  SEI has dedicated call centers and at-home agents who specialize in various fields; including, communications, financial services, healthcare, technology, transportation, and leisure services. *See* http://www.sykes.com/ourcompany.aspx (last visited, April 10, 2013).

17.    SEI employs 38,000 call center employees in 75+ global customer service call centers across the United States and 23 other countries.  *See* http://www.sykes.com/ourcompany/quickfacts.aspx (last visited, April 10, 2013).  In August 2012, Sykes purchased Alpine Access, Inc., another leading provider of call center services, and today SEI (the combined Sykes and Alpine) is one of the largest call center operations in the United States.

18.    SEI had annual gross revenues of $1.1 billion in 2011.  *See* 2011 Sykes Enterprises, Inc. Annual Report at 27.

19.    SEI is headquartered in the State of Florida, with its principal address at 400 North Ashley Drive, Suite 2800, Tampa, Florida 33602-4327.

20.    Alpine Access has its corporate offices at 1120 Lincoln Street, Suite 1400,

Denver, Colorado 80209.[3]

21.     At all relevant times, SEI was Plaintiff's "employer," and the company was engaged in "interstate commerce" as defined in the FLSA.

## GENERAL ALLEGATIONS

22.     Throughout her employment with SEI, Plaintiff regularly worked off-the-clock as part of her job as a Customer Service Representative.

23.     Plaintiff regularly worked off-the-clock, while booting up prior to clocking in, during her lunch break, and while wrapping up customer calls after SEI automatically clocked her out.

24.     At all relevant times, SEI was Plaintiff's "employer" and SEI and its corporate clients directed and directly benefited from the preliminary and postliminary activities Plaintiff was required to perform.

25.     At all relevant times, SEI and its corporate clients controlled Plaintiff's work schedule, duties, protocols, applications, assignments, and employment conditions.

26.     At all relevant times, SEI or its corporate clients tracked the amount of time that Plaintiff spent logged in to SEI or its corporate client's computer systems; however, SEI failed to document, track, or pay Plaintiff for: (1) preliminary setup and login time that Plaintiff spent working prior to every session; and (2) postliminary time spent wrapping up the final telephone calls of each shift and drafting memos.

27.     At all relevant times, Plaintiff was treated as a non-exempt hourly employee, subject to the requirements of the FLSA and MFLSA.

---

[3]     Alpine Access's website contains the following: Alpine Access has merged with Sykes Enterprises, Incorporated. If you are applying for a SYKES Home position, you are in the right place. We are working diligently behind the scenes to integrate our companies and will soon be launching the new brand for our at home platform. We invite you to please continue your application process as instructed.

28.     Upon information and belief, Plaintiff's supervisor informed Plaintiff that her requests to be paid were being investigated and would be taken care of in a future payment.  SEI never did this.

29.     At all relevant times, SEI failed to record any of the preliminary and postliminary time that was worked by Plaintiff in violation of the FLSA's and MFLSA's record keeping requirements.

30.     At all relevant times, SEI's policies and practices deprived Plaintiff of wages that were owed for the preliminary and postliminary activities Plaintiff performed.  In workweeks where Plaintiff worked 40 hours or more, SEI's policies and practices also deprived Plaintiff of overtime pay at a rate of 1.5 times her regular rate of pay.

31.     During her employment with SEI, Plaintiff worked numerous hours of overtime. Accordingly, Plaintiff would have been entitled to receive overtime pay (at a rate of 1.5 times her regular hourly rate) for the time she spent working on uncompensated preliminary and postliminary activities, including completing "repeat caller" memos in certain workweeks, had SEI properly documented and paid for the time.

32.     Plaintiff's most recent rate of pay was $9.00 per hour, which is $2.25 per hour more than the federally mandated minimum wage of $7.25 per hour.

33.     SEI is a leader in the field of call center services and SEI knew or should have known that Plaintiff and other CSA's preliminary start up and computer login time is compensable under the FLSA and MFLSA.

34.     SEI also knew or should have known that Plaintiff's postliminary time spent finishing a customer call or completing paperwork after the end of her shift and after she was automatically clocked out by SEI's computer systems is compensable under the FLSA and

MFLSA.

## COLLECTIVE ACTION ALLEGATIONS

36.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA

individually and on behalf of the putative Class defined as:

> All similarly situated current and former U.S. employees of Sykes Enterprises,
> Inc. and Alpine Access, Inc. who worked as Customer Service Representatives at
> any time during the last three years and who were not paid for off-the-clock work
> during their unpaid lunch break, preliminary "boot-up" time, and postliminary
> "call completion" time, or who worked over 40 hours per week and were not paid
> one-and-one-half times their regular salary.

The at-home employees provided the same customer service support for SEI as the call center

employees and both worked preliminary and postliminary hours that they were never

compensated for, in addition to time worked during their unpaid lunch break.   Plaintiff

reasonably estimates that there are over 20,000 SEI at-home and call center CSA Class members

that reside and work in the United States.   The precise number of Class members should be

readily available from a review of SEI's personnel and payroll records.

37.     Excluded from the Class are all SEI executives, administrative and professional

employees, including computer professionals and outside sales persons.

38.     With respect to the claims set forth in the action, a collective action under the

FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff

under 29 U.S.C. § 216(b).   The class of employees on behalf of whom Plaintiff brings the

collective action are similarly situated because (a) they have been or are employed in the same or

similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or

plan; and (c) their claims are based upon the same factual and legal theories.

39.     The employment relationship between SEI and every Class member is exactly the

same and differs only name, location, and rate of pay.   The key factual issues – the amount of

uncompensated preliminary setup and login time and the amount of postliminary call wrap up and memo completion time owed to each employee – does not vary substantially from Class member to Class member.

40.     The key legal issues are also the same for every Class member, to wit: (1) whether the preliminary setup and login time required to commence a session; and (2) whether the postliminary call wrap up time at the end of each shift are compensable under the FLSA.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings the action pursuant to Rule 23(b)(2) and (b)(3) on behalf of a putative Class defined to include:

> All current and former employees of Sykes Enterprises, Inc. and Alpine Access, Inc. who reside in Minnesota and worked as Customer Service Representatives at any time during the last three years and who were not paid for off-the-clock work during their unpaid lunch break, preliminary "boot-up" time, and postliminary "call completion" time, or who worked over 40 hours per week and were not paid one-and-one-half times their regular salary.

42.     The members of the Minnesota Class are so numerous that joinder of all members in the case would be impracticable.  Plaintiff reasonably estimates that there are over 100 SEI at-home and call center CSA Class members that reside and work in Minnesota.  The precise number of members should be readily available from a review of SEI's personnel and payroll records.

43.     There is a well-defined community of interest among Minnesota Class members and common questions of law and fact predominate in the action over any questions affecting individual members.  These common legal and factual questions, include, but are not limited to, the following:

> a.  Whether the preliminary time Minnesota Class members spend on setup and login activities each session is compensable under the FLSA and/or the MFLSA;

      b.   Whether the postliminary time Minnesota Class members spend handling the last call of their shift or drafting memos is compensable under the FLSA and/or the MFLSA;

      c.   Whether Minnesota Class members are owed wages (above the federally or state mandated minimum wage and overtime due under the FLSA and/or the MFLSA) for time spent performing preliminary or postliminary activities, and if so, the appropriate amount thereof; and

      d.   Whether SEI's violations were willful.

44.    Plaintiff's claims are typical of those of the Minnesota Class in that Plaintiff and all other members suffered damages as a direct and proximate result of SEI's common and systemic payroll policies and practices.  Plaintiff's claims arise from the same SEI policies, practices, and course of conduct as all other Minnesota Class members' claims and Plaintiff's legal theories are based on the same legal theories as all other Minnesota Class members.

45.    Plaintiff will fully and adequately protect the interests of the Minnesota Class and Plaintiff has retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions.  Neither Plaintiff nor her counsel has interests that are contrary to, or conflicting with, the interests of the Minnesota Class.

46.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for Minnesota Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

47.    The case will be manageable as a class action.  Plaintiff and her counsel know of no unusual difficulties in the case and SEI and its corporate clients all have advanced networked computer and payroll systems that will allow the class, wage, and damages issues in the case to be resolved with relative ease.

48.     Because the elements of Rule 23(b)(3) are satisfied in the case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue her claim as a class action").

49.     Because SEI has acted and refused to act on grounds that apply generally to the Class, and because declaratory relief is appropriate in the case with respect to the Minnesota Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I

**(Collective Action)**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. FAILURE TO PAY WAGES AND OVERTIME**

50.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

51.     At all times relevant to the action, SEI was an "employer" under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

52.     SEI is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

53.     At all times relevant to the action, Plaintiff was an "employee" of SEI within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

54.     Plaintiff either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

55.     At all times relevant to the action, SEI "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the

meaning of 29 U.S.C. § 203(g) of the FLSA.

56.     At all times relevant to the action, SEI required Plaintiff and all similarly situated current and former Class members to perform preliminary computer setup and login time each session, but failed to pay these employees the federally mandated minimum wage and/or overtime compensation for any of the services performed.

57.     The preliminary off-the-clock work performed by Plaintiff and all similarly situated Class members every session is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

58.     At all times relevant to the action, SEI required Plaintiff and all similarly situated current and former Class members to perform postliminary call wrap up time at the end of each shift, but failed to pay these employees their regular hourly wage and/or overtime compensation for any of these services.

59.     The postliminary off-the-clock work performed by Plaintiff and all similarly situated Class members at the end of every shift is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

60.     In workweeks where Plaintiff and other Class members worked 40 hours or more, the uncompensated preliminary setup and login time, and the uncompensated postliminary call wrap up time, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage.  29 U.S.C. § 207.

61.     Plaintiff and other Class members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

62.     SEI's violations of the FLSA were knowing and willful.  SEI knows or could have determined how long it takes for a CSA to complete the preliminary setup and login process

and how long it took to wrap up each call at the end of a CSA's shift, and it could have properly compensated Plaintiff and the Class for these preliminary and postliminary activities, but it did not.

63.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to her or her unpaid wages (and unpaid overtime if applicable) plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

### Count II

### (Class Action)
### VIOLATIONS OF THE MFLSA

64.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

65.    At all times relevant to the action, SEI was an employer covered by the overtime mandates of the MFLSA, and Plaintiff and the Minnesota Class employees are employees entitled to the MFLSA's protections.

66.    The MFLSA entitles employees to compensation for every hour worked in a workweek.  *See* Minn. Stat. § 177.24.

67.    The MFLSA entitles employees to overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 48 in a workweek. *See* Minn. Stat. § 177.25

68.    SEI, Plaintiff, and class members are "employer" and employees" for the purposes of MFLSA.  Additionally, Defendants are "large employers" for purposes of MFLSA.

69.    SEI violated MFLSA by regularly and repeatedly failing to compensate Plaintiff and the Minnesota Class for the time spent on the work activities described in this Complaint.

13

70.     As a result, Plaintiff and the Minnesota Class have and will continue suffer loss of income and other damages.  Accordingly, Plaintiff and the Minnesota Class are entitled recover unpaid wages owed, plus costs and attorney fees, and other appropriate relief under the MFLSA. *See* Minn. Stat. § 177.27.

## Count III

### (Class Action)
### VIOLATIONS OF THE MFLSA RECORD KEEPING REQUIREMENT

71.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

72.     SEI is required to make and keep a record of hours worked each day and each workweek by its employees.  Minn. Stat. § 177.30.

73.     SEI violated the MFLSA's record keeping requirement by failing to record each hour the Plaintiff and Minnesota Class worked.  Specifically, SEI's hour tracking system would prevent them from clocking in during preliminary work duties and clock them out during postliminary work duties, thereby failing to keep records of all hours Plaintiff and the Minnesota Class worked.

74.     As a direct and proximate result of SEI's conduct, Plaintiff and the Minnesota Class have suffered damages.

## Count IV

### (Class Action)
### Breach of Contract

75.     Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

76.     Plaintiff was hired in January, 2012.  SEI offered to pay Plaintiff $9.00 per hour

for each hour worked as a Customer Service Representative (a position that required her to field customer inquiries about an assortment of topics). Each Class members' contractual hourly rate is identified in paystubs and other records that SEI prepares as part of its regular business activities.

77.    Plaintiff accepted the offer.

78.    Plaintiff also accepted the offer by her performance – i.e., she reported for work and completed the tasks assigned to her.

79.    Plaintiff's work, and the work of the Class, required "boot-up" time and "call completion" time. *See infra* ¶¶ 4-6. Boot-up time is the time required for Plaintiff and the Class to "boot-up" their computer, log in to certain networks, and gain entry into SEI's systems. Plaintiff and the Class was required to complete these tasks as part of their day-to-day job duties (i.e., they cannot gain access to customer files until booting up and logging in so as to service the customer's needs until gaining access to SEI's systems).

80.    Plaintiff and every other Class member performed under their contract by doing their jobs in addition to carrying out the preliminary and postliminary activities that SEI required.

81.    Upon information and belief, SEI's systems automatically log an employee off the system at the end of the employee's shift. Once an employee is logged off the system they are no longer paid for time worked and the employee has no ability to manually enter any time worked off-the-clock.

82.    From time-to-time, Plaintiff and members of the Class would be in the middle of a call with a customer answering the customer's questions when they were logged off the system. In short, they were completing a fundamental term of the contract (in this case servicing a client) when Defendant unilaterally ended their shift yet required them to keep working without pay.

83.    Despite being required to complete these tasks (i.e., being required to continue to

work), Plaintiff and the Class was not compensated at their hourly rate for either "boot-up" or "call completion" time, in addition to any unpaid time during their lunch breaks.

84.     By failing to pay Plaintiff and the Class for the "boot-up," "call completion," and lunch break time, SEI breached its contract with Plaintiff and the Class to pay their hourly rate for each hour worked.  Upon information and belief, Class members' contractual rates of pay range from about $8.00 per hour to $11.00 per hour, or more.

85.     SEI also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Class members spent doing preliminary and postliminary activities, which is a fundamental part of an employer's job.

86.     As a direct and proximate result of SEI's breaches of the contract alleged here, Plaintiff and every other member of the Class has been damaged, in an amount to be determined at trial.

87.     In sum, the facts set forth above establish the following elements and terms of the contract:

a) Offer: a set hourly rate for each hour worked as a Customer Service Representative;

b) Acceptance: Plaintiff and the Class accepted the offer overtly or via performance (i.e., each showed up to work and completed the tasks assigned to them by SEI);

c) Breach: SEI did not pay Plaintiff and the Class for each hour (or part thereof) worked; and,

d) Damages: By failing to pay Plaintiff and the Class their hourly rate for each hour worked, Plaintiff and the Class was damaged in an amount to be proven at trial.

88.     These claims are appropriate for nationwide class certification under Rules 23(b)(2) and (b)(3) because the law of contracts is substantially similar throughout the United

States.

## Count V

### (Class Action)
### Quasi-Contractual Remedies
### Unjust Enrichment

89.     Plaintiff re-alleges and incorporates paragraphs 1-74, 79, 81, and 83 herein and further alleges as follows.

90.     Upon information and belief, Plaintiff's and every other Class members' preliminary and postliminary duties, in addition to work completed during their lunch breaks, provided valuable work and income for SEI; namely, compensation to SEI for completing customer service activity that directly benefited SEI.

91.     *Preliminary "Boot-up" Time*: Plaintiff and the Class were unable to perform *any* job function without "booting up" and logging in to their computer.  In short, in order to start their work of fielding customer calls precisely at their designated start time (and thereby ostensibly assist SEI in satisfying its contractual obligations to clients) Plaintiff and the Class "worked" off-the-clock before their shift began.  Without the preliminary "boot-up" time Plaintiff and the Class was unable to take customer calls at their designated start time.  Further, on information and belief, SEI's payroll system did not begin to compute time *until* Plaintiff and the Class completed the login process.  As such, even if their start time was at 8:00 a.m. and they began to log in at 8:00 a.m. (e.g., and took 15 minutes to do so), they would not be compensated until they completed the login process at 8:15 a.m.

92.     *Postliminary "Call Completion" Time*: Plaintiff and the Class were not able to manually clock out at the end of their shift; rather, SEI's systems automatically clocked Plaintiff and the Class out at the end of their scheduled shift *regardless of whether* they were finishing a

customer phone call thereby working for SEI to satisfy its contractual obligations to its clients. For example, if their shift ended at 4:30 p.m. and their last customer call ended at 4:40 p.m. the system automatically clocked them out at 4:30 and they were not paid for the remaining time.

93.     As part of their ongoing employment relationships with SEI, Plaintiff and other Class members expected to be paid wages for the time they spent doing their jobs, including in performance of the preliminary setup and login activities performed each session, work completed during their lunch break, and the postliminary call wrap up activities performed at the end of each shift.

94.     By not paying Plaintiff and other Class members for the time they spent performing necessary preliminary duties, duties during their lunch break, and postliminary activities, SEI has been unjustly enriched at the expense of Plaintiff and the Class in an amount to be determined at trial.

95.     By not paying Plaintiff and other Class members for the time they spent performing necessary preliminary and postliminary activities, SEI has also saved itself thousands of dollars in unpaid payroll taxes – taxes that would have otherwise been credited to Plaintiff's and Class members' benefit.

96.     It would be unjust and inequitable to allow SEI to retain the benefit of the work performed by Plaintiff and the Class without compensation.

97.     These claims are appropriate for nationwide class certification under Rules 23(b)(2) and (b)(3) because the law of unjust enrichment is substantially similar throughout the United States.

WHEREFORE, Plaintiff requests the following relief:

    a.      certifying the case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.      certifying the action as a class action pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's state law claims (Counts II, III, IV, & V);

c.      ordering SEI to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all Class members, and permitting Plaintiff to send notice of the action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class of their rights by law to join and participate in the lawsuit;

d.      designating Plaintiff as the representative of the Class and undersigned counsel as Class counsel;

e.      declaring that SEI violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f.      declaring that SEI's violation of the FLSA was willful;

g.      declaring that SEI violated the MFLSA;

h.      declaring that SEI's violation of the MFLSA was willful;

i.      granting a declaratory judgment that SEI's practices are unlawful under Minnesota Law;

j.      equitable and injunctive relief to remedy SEI's violations of Minnesota Law, including but not limited to, an order enjoining SEI from continuing is unlawful practices

k.      assessment of statutory penalties against SEI, including those under Minn. Stat. § 177.27, subd. 7 as incorporated through Minn. Stat. § 177.27, subd. 8, for each violation of the MFLSA's record keeping requirements;

l.      legal and equitable relief under the MFLSA, Minn. Stat. § 177.27, *et seq.*;

m.      granting judgment in favor of Plaintiff and against SEI and awarding Plaintiff and the Class the full amount of damages and liquidated damages available by law;

n.      awarding reasonable attorney fees and costs incurred by Plaintiff in filing the action as provided by statute;

o.      awarding pre- and post-judgment interest to Plaintiff on these damages; and

        p.      awarding such other and further relief as the Court deems appropriate.

DATED:   April 23, 2013            Respectfully Submitted,

                      _s/ Timothy J. Becker_____
Timothy J. Becker
*(Pending Admission Pro Hac Vice)*
MN Bar No. 256663
Jacob R. Rusch
*(Pending Admission Pro Hac Vice)*
MN Bar No. 391892
JOHNSON BECKER, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, Minnesota 55402
Telephone: (612) 436-1800
Facsimile: (612) 436-1801
tbecker@johnsonbecker.com
jrusch@johnsonbecker.com

Lance C. Young
*(Pending Admission Pro Hac Vice)*
MI Bar No. P51254
Jesse L. Young
*(Pending Admission Pro Hac Vice)*
MI Bar No. P72614
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
248-355-0300
lyoung@sommerspc.com
jyoung@sommerspc.com

*Trial Counsel for Plaintiff*